PHINEAS WILLIAMS V. SAMUEL W. AUTEN ET AL.[*]

FILED NOVEMBER 20, 1901.  No. 10,488.

1. **Statute of Frauds:** ORIGINAL PROMISE. Where goods, money or services are furnished to a third person, at the request and on the credit of the promisor, the undertaking is original and the promisor will be liable although the promise is not in writing. *Peyson v. Conniff,* 32 Nebr., 269.

2. ———: COLLATERAL LIABILITY: VOID UNLESS IN WRITING. Where, however, goods are furnished to a third party at the request of a promisor and with reliance on his credit, and the transaction is such that the third party or beneficiary is liable therefor to the promisee as an original undertaking on his part, and there being no joint contract the promisor's liability is collateral only as guarantor, and unless in writing is void under the statute of frauds.

ERROR from the district court for Saunders county. Tried below before SEDGWICK, J. *Reversed in part.*

*H. Gilkeson, Conrad Hollenbeck* and *Frank Hollenbeck,* for plaintiff in error.

*Good & Slama, contra.*

HOLCOMB, J.

This cause originated in the county court for Saunders county. After trial an appeal was taken to the district court. A trial was had in the district court to the court and a jury, which resulted in a verdict and judgment against the defendants therein, Phineas Williams and

*Rehearing allowed.

Debolt B. Welty. Williams prosecutes error in this court from the judgment thus rendered against him. By the action had in the lower courts, Williams and Welty were sought to be held jointly liable on account for goods and merchandise alleged to have been sold them by the plaintiffs below, who are doing business as a partnership in conducting a general retail merchandise establishment. Williams's defense is that his liability for the account sued on, if existing at all, is collateral only, and not that of a principal debtor, and that such contract obligation, being to answer for the debt of another, and not being in writing, is void under the statute of frauds. Welty makes no defense. A clear understanding of the issues necessitates brief reference to the pleadings filed by the plaintiffs, both in the county and district courts. In the county court, the petition alleges: "That at the instance and the request of the defendant, Phineas Williams, and upon his expressed promise to become liable therefor, the plaintiff sold and delivered to the defendant Welty, goods, wares, and merchandise. * * * That requests for payments thereof has been made both upon the defendant Welty and defendant Williams." In the district court the petition alleges: "That on and between said dates at the instance and special request of the defendant, Phineas Williams, and upon his express promise to be liable therefor, and pay for the same, the plaintiff sold to the defendants and delivered to the defendant Welty, goods, wares and merchandise, * * * and request for payment has been made upon the defendants."

The above constitutes the material averments in the pleadings of the plaintiffs with reference to the character of the contract on which a recovery is sought against both defendants. While the defendant Williams denies any agreement with the plaintiff, either as an original undertaking or as guarantor of the debts of Welty, the evidence, we think, warrants the conclusion of an agreement to pay the account on which the action is founded, either as guarantor or as promisor on an independent contract

as a principal therein. Construing the evidence as favorably to the plaintiffs as it is fairly capable of, we find the facts substantially as follows: Plaintiffs were engaged in the general merchandise business, as has been mentioned. Welty was a tenant farming land owned by Williams. Williams at one time spoke to one of the plaintiffs about letting Welty have goods from their store as he might be in need of, saying: "Will you let D. Welty have goods if I pay for them?" to which the party answered in the affirmative. Williams then directed the merchant to: "charge me with what I get, if anything, and charge De with what he gets; when I pay give me credit and when he pays give him credit; when I pay money have the books to show that Williams paid and not Welty. I want those books to show the transactions of each." Welty soon after began to get merchandise, which was charged in the books of the plaintiffs to him. After the account had thus run for some time and after giving Welty credit for payments made on the account by him, a balance was found due of $164.25. It is then testified that Williams, in conversation with one of the plaintiffs, said: "I have no money, I will pay in a few days." Later on he told the merchant not to let D. B. Welty have any more goods as he would not pay for them; that he was going to move him from the farm. Afterwards Williams stated: "De and I have fixed it up." Later he said: "I don't know as I can pay for those goods." After some further conversation in which plaintiffs said they wanted to know who was to pay for the goods, and later on during the same day, Williams stated to the plaintiffs: "I stand for the payment of De's [Debolt Welty's] goods in the future as I have in the past." There is also some evidence showing that Welty's credit was not good and that Williams said he had security from Welty for the obligation he assumed by the contract sued on. We are disposed to the view that the evidence is sufficient to support a finding that Williams was liable as the party with whom the contract was made as the promisor in an original undertaking, and

to whom the credit was extended and the goods sold, although for the benefit of and delivered to another, except for that which appears in the record from the pleadings and the evidence, and which conclusively shows that the contract was made with, and the goods sold to Welty, and credit extended to him as well as to Williams. We are not dealing with a case where an agreement upon a valid consideration is entered into, whereby one obligates himself to pay for goods or services for the benefit of and furnished or rendered to a third party, such third party having no other or further interest in or connection with the transaction save that of being the recipient of the benefits thus bestowed. In the class of cases referred to, the promise, although verbal, is clearly an original undertaking in no way affected by the statute of frauds. In such cases the contract is made with, and the credit is given exclusively to the party sought to be charged, and his obligation is that of a principal, and not a guarantor. Regarding these cases, the rule is well stated in *Peyson v. Conniff*, 32 Nebr., 269, where it is held: "Where goods, money, or services are furnished to a third person, at the request and on the credit of the promisor, the undertaking is original and the promisor will be liable although the promise is not in writing." The rule stated is well supported by the authorities cited in the opinion. Nor is the case at bar one where two or more may become jointly obligated under an agreement entered into by all the parties thereto for goods or services, even though but one of the contracting parties or a third party may receive the thing contracted for and be the beneficiary under the contract. In this case the contract was made with and the goods sold to either Williams or Welty, but not to both of them. There is nothing in the record warranting the inference of a joint liability. The nature of the transaction and the circumstances surrounding the same, conclusively negative the idea of joint obligation. If one is liable under the agreement, the other is not. Both can not be held jointly for the goods obtained by and deliv-

ered to Welty under the account sued on. The question then is, can Williams, who is here complaining, be held under the pleadings and the evidence as a principal promisor on an original contract of indebtedness, or must his agreement be construed as one of guaranty or of promise to answer for the debt of another, and therefore void because not in writing?

It is argued that because there is evidence tending to show that Williams had secured himself by taking a mortgage on Welty's property, and also that the plaintiffs would not have extended the credit had it not been for their reliance on Williams's promise to pay the debt, he should be held responsible as a principal in the transaction. But these facts are equally consistent with his liability as guarantor. The plaintiffs may have relied on his verbal guaranty of payment of the debt of Welty, if such be the legal effect of the transaction, and Williams may have undertaken to obtain security from Welty because of such verbal guaranty, and yet these facts would not justify us in construing a collateral into an original undertaking. These facts, admitting them to be established, do not materially aid us in determining the true character of the liability of defendant Williams under the agreement mentioned. We are of the opinion that the question hinges and must turn on the action of the parties under and in pursuance of the alleged agreement, and especially of the plaintiffs, in what they have said and done with reference to the credit extended to and liability sought to be imposed on the defendant Welty. They have obtained a judgment against him which could have been done only on the theory that the contract for the sale of the merchandise sued for was made with him and that he thereby became legally liable for the payment of the value thereof. They charged the goods to him, and he made and was credited on the account with certain payments. While this is not conclusive standing alone, when taken in connection with other action of the plaintiffs it admits of no other conclusion than that the credit

was extended to Welty. They demanded payment of him before beginning the action. They sold the goods relying on Williams's agreement to see that they were paid for. They demanded payment also of him. What then must be the true character of the contract under plaintiffs' own version of the transaction and to which they are solemnly and irrevocably committed by their actions as shown by the pleadings and the evidence? The liability of the defendants, as has been stated, can not be that of joint debtors. The essential requirements of a joint obligation are altogether wanting. Both defendants can not then be held liable as principals, and the liability of one, therefore, must be secondary. Welty's liability can not be of a secondary character; his obligation is that of a principal, or it does not exist. Williams's liability may be, and must, we think, be conclusively held to be such under the pleadings and the evidence. If his verbal agreement to pay the debt is not that of a principal in the transaction, his is a collateral undertaking, and the statute of frauds may be invoked to determine his legal liability. The object and intent of the statute, says Reed in his work on the Statute of Frauds, section 87, is to deny the imposition of a liability by parol on two persons to pay the debt of one. See, also, *Hendricks v. Robinson,* 56 Miss., 699.

The authorities appear entirely harmonious in support of the rule that if the beneficiary or person for whose use the goods are furnished is liable at all by reason thereof, any other promise by a third person to pay the same debt must be in writing, otherwise it is void by operation of the provisions of the statute of frauds. Reed, Statute of Frauds, sec. 31, and authorities there cited. In *Cowdin v. Gottgetreu,* 55 N. Y., 650, it is stated in the headnotes that: "While a person may become liable upon a parol promise for goods purchased which are delivered to and are intended for the use of another, in order to make him so the debt must be his only; he must be exclusively liable therefor." In speaking of the rule applicable to the same state of facts as in the case at bar, it is observed by

the appellate court of Illinois in *Schotte v. Puscheck,* 79
Ill. App., 32: "It appears clearly from the evidence pre-
sented that there was an original undertaking by Wilmot;
that credit was given to him; that he was charged with
the account upon the books of appellees, and that a legal
obligation, capable of being enforced by law, existed on the
part of Wilmot to pay appellees for these goods. The
undertaking of appellant, if any, was collateral, and the
statute of frauds would apply." The converse of the
proposition we are considering is thus stated by the su-
preme court of Illinois in the case of *Resseter v. Water-
man,* 151 Ill., 169, 176: "In order that the promise can
be held to be within the statute, it is essential that there
be a binding and subsisting obligation or liability to the
promisee, to which the promise is collateral. In other
words, 'that the party for whom the promise has been made
must be liable to the party to whom it is made' "—citing, 3
Parsons, Contracts, *21, note *p; Hargreaves v. Parsons,* 13
M. &. W. [Eng.], 561; *Eastwood v. Kenyon,* 11 A. & E.
[Eng.], 438; *Westfall v. Parsons,* 16 Barb. [N. Y.], 645;
*Preble v. Baldwin,* 6 Cush. [Mass.], 549; *Pratt v. Humph-
rey,* 22 Conn., 317; *Alger v. Scoville,* 1 Gray [Mass.], 391;
*Barker v. Bucklin,* 2 Denio [N. Y.], 45; *Perkins v. Little-
field,* 5 Allen [Mass.], 370; *Tighe v. Morrison,* 116 N. Y.,
263, and cases cited. See, also, *Rose v. O'Linn,* 10 Nebr.,
364; *Langdon v. Richardson,* 12 N. W. Rep. [Ia.], 622;
*Studley v. Barth,* 54 Mich., 6.

In the case at bar the liability of Welty, the person for
whom it is alleged the debt was contracted and promised
to be paid by Williams, has been pleaded and proved in
the proceedings heretofore taken in this cause, and it now
stands as a final adjudication that such liability as to
him exists in favor of the promisees, the plaintiffs in the
action; and, applying the rule we have just discussed, it
must follow, as a necessary sequence, that Williams's
agreement to pay the debt is collateral only, and, not be-
ing in writing, is void by reason of the statute of frauds,
and the judgment as to him must be reversed and he

dismissed from the case. The judgment is accordingly reversed as to the defendant Williams, and the cause. remanded with direction that the action as to him be dismissed.

JUDGMENT ACCORDINGLY.